[Cite as *State v. Lowry*, 2026-Ohio-2509.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

    Appellee

v.

Julianne Lowry

    Appellant

Court of Appeals No.  L-25-00041

Trial Court No.  CRB 24 1345

**DECISION AND JUDGMENT**

Decided: June 30, 2026

* * * * *

Jeffrey Lingo, City of Sylvania Assistant Prosecuting Attorney, for
appellee.

Henry Schaefer, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal from the May 6, 2025 judgment of the
Sylvania Municipal Court.  For the reasons that follow, we affirm.

## Background

{¶ 2} Appellant, Julianne Lowry was charged with one count of menacing in violation of R.C. 2903.22 and one count of telecommunications harassment in violation of R.C. 2917.21 as a result of voicemails and text messages she left for her brother, M.J.

{¶ 3} A bench trial was had before a magistrate. The State presented the testimony of M.J. and Lowry testified on her own behalf. The facts are generally undisputed. M.J. and Lowry are siblings, and M.J. is the power of attorney for their father, who has dementia and has been placed in a senior living care facility (hereinafter "the facility") against the wishes of Lowry. Prior to father's placement in the facility, Lowry took care of her father and was financially compensated for doing so.

{¶ 4} Relevant to the instant charges, Lowry repeatedly contacted M.J., by phone and text messages, despite his multiple requests that she stop. M.J. also testified that when he blocked her number she drove to his house "and threatened [him] in his driveway." Voicemails left by Lowry were admitted in trial. For the most part, the voicemails were hostile communications relating to concerns about their father, their father's living arrangements and their father's house, and demands for money she claimed was owed to her. In one of the voicemails, Lowry states "do you need to acclimate to the fucking freezer I'm going to put your ass in." Additionally, M.J. read into evidence certain text messages he received from Lowry. M.J. conceded that the particular text messages read at trial were "not overly threatening" and contained no explicit threats.

2.

{¶ 5} M.J. testified that the repeated communications made him stressed and anxious and he lost sleep.

{¶ 6} Lowry explained that generally, her communications with M.J. were for the purpose of communicating on behalf of their father and dealt with maintaining their father's property. She stated that she was not trying to hurt or upset or annoy M.J. when she reached out to him. She gave the following explanation for her freezer comment:

> Q        Okay.  You know, we heard about a comment you made on a voicemail about putting him in a freezer.  What was that about?
> A        Comparable to an ice rink, the only place that he tends to listen, where there's halogen lights and it activates his brain.
> Q        Can you explain why ice rink a little bit more?  Does your broth - -
> A        He's a hockey coach.
> Q        He's a hockey coach?  Okay.
>          Did you mean that as a threat of harm to your brother?
> A        That's the only place he thinks.
> Q        Okay.
> A        There was no threat of injuring him, or I don't know how you'd get him in a freezer, other than a hockey rink being freezing to me.

{¶ 7} The magistrate found Lowry guilty of both charges[1] and the magistrate's decision was adopted by the trial court. She was sentenced to 180 days for telecommunications harassment and 30 days for menacing. Both sentences were suspended and she was ordered to serve one year of probation.

{¶ 8} Lowry appealed and raised the following assignment of error:

> Ms. Lowry's convictions for telecommunications harassment (R.C. 2917.21(A)(1)–(3)) and menacing (R.C. 2903.22(A)) are based on insufficient

---

[1] Lowry was also charged with one count of dissemination of the image of another person, under a separate case number, which was tried with the charges in the instant case. She was found not guilty of that charge, which is not relevant to the instant appeal.

evidence and are against the manifest weight of the evidence, in violation of her right to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

## Sufficiency of the Evidence

{¶ 9} Lowry contends that her convictions are based on insufficient evidence. The sufficiency of the evidence presents a question of law. *State v. Harvey*, 2022-Ohio-4650, ¶ 52 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). "The test of sufficiency is one of adequacy, and a conviction lacking evidence as to every element of the offense is a denial of due process." *State v. Thompson*, 2026-Ohio-1491, ¶ 20 (6th Dist.), citing *Thompkins* at 386-387 and *State v. Messenger*, 2022-Ohio-4562, ¶ 13.

{¶ 10} When reviewing the sufficiency of the evidence, we view "the evidence in the light most favorable to the prosecution and asks whether "'any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.'"" *State v. Brown*, 2025-Ohio-2804, ¶ 16, quoting *State v. Dean*, 2015-Ohio-4347, ¶ 150. "The appropriate standard of review for a sufficiency-of-the-evidence challenge is 'whether, if believed, the evidence can sustain the verdict as a matter of law.' When reviewing whether the State met its burden of production, 'an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."'" (Citations omitted.) *Id*. at ¶ 17. A verdict should not be disturbed "unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *State v. Jenks,* 61 Ohio St.3d 259, 273 (1991).

4.

{¶ 11} Lowry was convicted of both menacing and telecommunications harassment. With respect to the telecommunications harassment conviction, both the State and the trial court cite to R.C. 2917.21(A)(1), which prohibits a person from knowingly making a telecommunication "with purpose to harass, intimidate, or abuse any person." We have defined "harassment" to mean "'to disturb persistently; torment, as with trouble or cares; bother continually; pester; persecute * * * to trouble by repeated attacks * * *.'" *State v. Carnicom*, 2021-Ohio-1675, ¶ 19 (6th Dist.), citing Webster's New Universal Unabridged Dictionary (1996) 870. "Abuse" has been interpreted as "cruel or violent treatment of someone; [specifically] physical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury" and "intimidate" as "to 'make timid or fearful: inspire or affect with fear: frighten.'" *State v. Pierce*, 2024-Ohio-5357, ¶ 21 (12th Dist.), quoting *A.W. v. Kircher*, 2024-Ohio-2115, ¶ 45 (12th Dist.) and *State v. Cress*, 2006-Ohio-6501, ¶ 39.

{¶ 12} Lowry contends that the State didn't present evidence that she acted knowingly, as required by the statute. She states that the text messages did not contain any threats, and similarly, the voicemails were "loud, angry, but not threatening." She explains that the comment that M.J. was going to be put in a freezer was not a threat, as she explained in her testimony. She maintains that "no rational trier of fact could find beyond a reasonable doubt that this single, explained comment satisfied . . . the purpose-to-harass element of telecommunications harassment."

{¶ 13} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Unless one admits to acting knowingly, whether a person acts knowingly can

5.

only be determined from the surrounding facts and circumstances, including the act itself. *State v. Baker*, 2010-Ohio-4719, ¶ 23 (6th Dist.), citing *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist. 2001).

{¶ 14} We find evidence in the record by which a rational trier of fact could find that Lowry knowingly made communications with the purpose of harassing M.J. M.J. testified to "being bombarded" by texts, phone calls and voicemails, that the phone calls involved screaming and were a "continual" "daily thing" and were described as "nonstop attacks and attacks." Additionally, these communications continued despite repeated requests that Lowry stop. The making of numerous communications has been found to often be "indicative of the defendant's specific purpose to harass," as is evidence that communications continued after being told to stop, and an aggressive tone to the communications. *State v. Pierce*, 2024-Ohio-5357, ¶ 22 (12th Dist.), citing *Hamilton v. Combs*, 2019-Ohio-190, ¶ 20 (12th Dist.) and *State v. Davidson*, 2009-Ohio-6750, ¶ 20 (12th Dist.).

{¶ 15} Additionally, we find a rational trier of fact could have found that Lowry knowingly made a telecommunication with the purpose of intimidating M.J. based on Lowry's freezer comment.

{¶ 16} Therefore, we find sufficient evidence by which a rational trier of fact could have found a violation of R.C. 2917.21(A)(1).

{¶ 17} As to the menacing conviction, R.C. 2903.22 states, in relevant part, that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." Lowry also asserts that the State failed to establish the mens rea

6.

element of this offense - that she satisfied the serious-physical-harm element. Here again the freezer comment supports a finding that Lowry knowingly caused M.J. to believe that she would cause him physical harm, as does M.J.'s testimony that, when he blocked Lowry's phone number she came to his house and threatened him in his driveway.

{¶ 18} We therefore do not find Lowry's convictions to be based on insufficient evidence.

**Manifest Weight of the Evidence**

{¶ 19} Lowry additionally contends that her convictions were against the manifest weight of the evidence. In determining whether Lowry's convictions were against the manifest weight of the evidence, we must review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and decide whether in resolving any conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 2010-Ohio-6048, ¶ 48 (6th Dist.), citing *Thompkins*, 78 Ohio St.3d. at 387. We do not view the evidence in a light most favorable to the State; rather, we "sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Lewis*, 2022-Ohio-4421, ¶ 22 (6th Dist.), quoting *State v. Robinson*, 2012-Ohio-6068, ¶ 15 (6th Dist.). "Although we consider the credibility of witnesses under a manifest-weight standard, we must, nonetheless, extend special deference to the fact-finder's credibility determinations, given that it is the finder of fact that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor." *State v. Brooks*, 2023-Ohio-2978, ¶ 13 (6th Dist.), citing *State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.). A court's "discretionary power to grant a new trial should be exercised only in

7.

the exceptional case in which the evidence weighs heavily against the conviction." *State v. Ford*, 2019-Ohio-4539, ¶ 340, quoting *Thompkins* at 387.

{¶ 20} Lowry restates her arguments under the manifest weight analysis. With respect to telecommunications harassment, she contends that M.J. conceded that the texts were non-threatening, and that the freezer comment was "credibly explained as concern for [father's] care and [Lowry's] need to have M.J. pay attention and think." She also cites to *State v. Shuck*, 2020-Ohio-6989 (9th Dist.) for the proposition that the trial court was required to review the evidence in a manner to protect her First Amendment rights, "which limit the legislature's ability to criminalize speech." We note that *Shuck* explained that a person's First Amendment rights are protected by the statute's focus on the caller's intent rather than the content of the communication. *Id*. at ¶ 13.

{¶ 21} After reviewing the record, we cannot conclude that the trial court lost its way when finding that Lowry knowingly made a telecommunication for the purpose of harassing or intimidating M.J. With respect to whether the freezer comment was "credibly explained," this is a credibility issue to which we defer to the trier of fact. And we note that M.J. testified that the freezer comment was "absolutely a threat, and that's exactly how [he] took it." Based upon Lowry's freezer comment, as well as the barrage of texts and calls testified to by M.J., we cannot find that this is the exceptional case in which the evidence weighs heavily against the conviction such that Lowry's conviction for telecommunication harassment must be reversed.

{¶ 22} With respect to Lowry's conviction for menacing, relying on the same evidence discussed above with regard to our sufficiency of the evidence analysis, we also cannot find that

8.

the trial court clearly lost its way and created such a manifest miscarriage of justice that Lowry's menacing conviction must be reversed.

{¶ 23} We therefore do not find Lowry's convictions to be against the manifest weight of the evidence. Her sole assignment of error is not well-taken.

**Conclusion**

{¶ 24} The judgment of the Sylvania Municipal Court is affirmed. Pursuant to App.R. 24, Lowry is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.
_____
JUDGE

Myron C. Duhart, J.
_____
JUDGE

Charles E. Sulek, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.